**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREW CULER, | ) | Case No. 4:24-CV-01816-JPC |
| | ) | |
| Petitioner, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| WARDEN, SHELBIE SMITH, | ) | ARMSTRONG |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |

## I.  INTRODUCTION

Petitioner, Andrew Culler ("Mr. Culler"),[1] seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Culler is serving a sentence of 78 months in prison after being convicted of sexual battery and gross sexual imposition.

Mr. Culler asserts a single ground for relief. Respondent, Warden Shelbie Smith ("Warden"), filed an answer/return of writ on April 7, 2025. (ECF No. 10). Mr. Culler filed a traverse on June 23, 2025. (ECF No. 12).

This matter was referred to me on October 18, 2024 under Local Rule 72.2 to prepare a report and recommendation on Mr. Culler's petition. (*See* ECF non-document entry dated October 18, 2024). For the reasons set forth below, I recommend that Mr. Culler's petition be DISMISSED and/or DENIED. I also recommend that the Court deny Mr. Culler's request for discovery and an evidentiary hearing. I further recommend that the Court not grant Mr. Culler a certificate of appealability.

---

[1] In the official case caption, Petitioner's name is spelled "Andrew Culer." However, in the parties' briefs and the state court record, Petitioner's name is consistently spelled "Andrew Culler." Accordingly, I refer to Petitioner as "Mr. Culler" throughout this report and recommendation.

## II.    RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings

of fact are presumed correct and can be contravened only if the habeas petitioner shows, by

clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C.

§ 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d

524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by

a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio

Court of Appeals for the Seventh Appellate District summarized the facts as follows:

> {¶4} At the bench trial, the testimony indicated the child victim's parents are divorced.
> During visitation with Appellant, child victim was accused of selling or giving a Vape
> Pen to her cousin. An intense argument ensued, which resulted in the child victim's
> mother arriving to end the visitation and take the child victim home with her.

> {¶5} Appellant called the police on his ex-wife. When the police arrived, child victim
> disclosed to the officer that Appellant on multiple occasions had touched her
> inappropriately. The child victim's mom was advised to leave the scene with child
> victim and to take her to the police station for a formal statement.

> {¶6} Two days prior to this incident, child victim disclosed the inappropriate conduct
> to her boyfriend. The text messages between child victim and boyfriend were admitted
> at trial.

> {¶7} Following the formal statement, child victim met with an intake investigator at
> Children Services, a social worker with the Akron Children's Hospital Child
> Advocacy Center, and a nurse practitioner at Akron Children's Hospital Child
> Advocacy Center. The intake investigator helped with scheduling the appointment
> with the Child Advocacy Center. Tr. 166. The social worker conducted a psychosocial
> assessment and a diagnostic interview; the nurse practitioner did a medical exam. Trial
> Tr. 247, 280. All three testified at trial.

> {¶8} Child victim testified at trial and described the incidents with Appellant
> inappropriately touching her. She described incidents of digital penetration, fellatio,
> cunnilingus, touching her breasts, and Appellant using her hand to masturbate him. In
> one specific instance, she recalled Appellant giving her whiskey when she was sick.
> He then proceeded to take off her pants and his pants. There was no penal penetration
> due to his current wife calling for him from upstairs. Child victim also testified
> Appellant would watch shark videos with her and then he would turn on pornography
> and ask her if she would like him to do the things depicted to her. There were also text
> messages and Facebook messenger messages between Appellant and child victim.

Many were of emojis, particularly a smiley face with a tongue sticking out. Child victim testified that Appellant would also text "tonight?". She took these messages to mean he wanted to engage in sexual activity.

{¶9} Appellant, his current wife, and his brother-in-law testified on his behalf. All contended the allegations were not true and were fabricated. Appellant contended child victim was upset because she was in trouble for selling or giving a Vape Pen to her cousin and because she wanted to see her boyfriend on their six-month anniversary, but was not allowed because Appellant had grounded her from seeing her boyfriend. Appellant argued evidence that the sexual abuse allegation was a fabrication was in a text message conversation between the boyfriend and child victim. Child victim indicated in the text messages that she had something to tell her boyfriend about what Appellant did. She stated she was going to ruin Appellant. Boyfriend asked if she was going to pretend Appellant raped her and her response was "no not exactly." State's Exhibit 5.

(ECF No. 10-1, Exhibit 16); *State v. Culler*, No. 20 CO 0030, 2021 WL 6284390,

2021-Ohio-4642 (7th Dist. Dec. 17, 2021).

## III.  PROCEDURAL HISTORY

### A.  <u>State Court Conviction</u>

On February 13, 2019, Mr. Culler was indicted in the Columbiana County Court of

Common Pleas on: (1) one third-degree felony count of sexual battery involving his child in

violation of O.R.C. § 2907.03(A)(5); and (2) two third-degree felony counts of gross sexual

imposition in violation of O.R.C. § 2907.05(A)(4). (ECF No. 10-1, Exhibit 1). On March 6,

2019, Mr. Culler pled not guilty to all charges. (ECF No. 10-1, Exhibit 2).

On February 24, 2020, Mr. Culler waived his right to a trial by jury and filed a motion

for a bench trial, which the trial court granted. (ECF No. 10-1, Exhibits 3-4, 6). On October

21, 2020, the trial court found Mr. Culler guilty of all charges. (ECF No. 10-1, Exhibit 7). On

October 30, 2020, the trial court sentenced Mr. Culler to an aggregate term of 78 months.

(ECF No. 10-1, Exhibit 8).

### B.  <u>Direct Appeal</u>

On November 6, 2020, Mr. Culler, through new appellate counsel, timely filed a

notice of appeal to the Seventh Appellate District. (ECF No. 10-1, Exhibit 9). Mr. Culler also filed a motion requesting that his sentence be stayed, or, alternatively, that he be released on bond pending the resolution of his appeal, which was denied. (ECF No. 10-1, Exhibits 10, 12). In his appellate brief, Mr. Culler raised the following assignments of error:

1. The trial court erred in allowing into evidence sexual assault examiner testimony that was truth propensity testimony in disguise in violation of Evid.R. 702 as well as U.S. Const. Amend. VI and XIV.

2. The trial court erred in allowing into evidence lay recapitulations of a child witness's narrative in violation of the general prohibition against hearsay and against the confrontation clauses of U.S. Const. Amend. VI and XIV.

3. The trial court erred in allowing a conviction in the face of insufficient evidence in violation of U.S. Const. Amend. VI and XIV.

4. The trial court erred in allowing a conviction from proceedings infected with ineffective assistance of counsel in violation of U.S. Const. Amend. VI and XIV.

(ECF No. 10-1, Exhibit 13).

On December 16, 2021, the Seventh Appellate District affirmed Mr. Culler's conviction. (ECF No. 10-1, Exhibit 16). On January 3, 2022, Mr. Culler, through counsel, timely filed a notice of appeal to the Ohio Supreme Court. (ECF No. 10-1, Exhibit 17). In his memorandum in support of jurisdiction, Mr. Culler raised the following propositions of law:

1. Under Ohio law, a sexual abuse examiner must testify based on physical or behavioral evidence. Here, no such evidence came before the bench, yet the examiners testimony was still admitted, and as such reversal is appropriate.

2. Trial counsel is ineffective in failing to object to hearsay testimony, when that testimony (a) is obviously inadmissible and (b) when such failure to object prejudices the defendant—i.e. results in a guilty verdict. Here, trial counsel's failure to object establishes those two elements, and reversal is appropriate.

(ECF No. 10-1, Exhibit 18). On April 13, 2022, the Ohio Supreme Court declined to accept jurisdiction of Mr. Culler's appeal. (ECF No. 10-1, Exhibit 19).

4

**C. Petition for Post-Conviction Relief**

On March 3, 2022, while his direct appeal to the Ohio Supreme Court was pending, Mr. Culler filed a petition for post-conviction relief in the trial court pursuant to O.R.C. § 2953.21. (ECF No. 10-1, Exhibit 20). In his petition, Mr. Culler argued that his trial counsel was ineffective in failing to object to the introduction of out-of-court statements that the victim, E.C., made to investigators. *Id*. Mr. Culler also asserted that trial counsel failed to investigate potential objections to the introduction of this evidence and did not discuss the issue with him. *Id*.

On March 24, 2022, the trial court denied and dismissed Mr. Culler's petition without a hearing, holding that it was barred by the doctrine of res judicata. (ECF No. 10-1, Exhibit 22). On April 22, 2022, Mr. Culler, through counsel, filed a notice of appeal to the Seventh Appellate District. (ECF No. 10-1, Exhibit 23). In his appellate brief, Mr. Culler raised the following assignment of error:

1. The trial Court erred in denying Andrew Culler's Petition for postconviction relief without an evidentiary hearing.

(ECF No. 10-1, Exhibit 25). On June 26, 2023, the Seventh Appellate District affirmed. (ECF No. 10-1, Exhibit 28).

On August 9, 2023, Mr. Culler, through counsel, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 10-1, Exhibit 29). In his memorandum in support of jurisdiction, Mr. Culler raised the following proposition of law:

1. If an appellant presented, below, competent and credible evidence dehors the record of ineffective assistance, then a trial Court must hold an evidentiary hearing. Here, Andrew Culler presented same, but the trial court declined to hold a hearing. Should this Court assume jurisdiction?

(ECF No. 10-1, Exhibit 30). On October 24, 2023, the Ohio Supreme Court declined to accept jurisdiction over the appeal. (ECF No. 10-1, Exhibit 32).

On January 22, 2024, Mr. Culler, through counsel, filed a petition for a writ of certiorari in the United States Supreme Court. (ECF No. 10-1, Exhibits 33-34). In his petition, Mr. Culler presented the following question for review:

1. The admission of testimonial hearsay violates the Sixth Amendment's Confrontation Clause. In this case, the medical/sexual assault nurse's examination constituted testimonial hearsay. This is due to the lack of medical corroboration and reliance on victim statements for conclusions. Must this Court assume jurisdiction to address this potential Sixth Amendment violation?

(ECF No. 10-1, Exhibit 33). On October 7, 2024, the Supreme Court denied Mr. Culler's petition. (ECF No. 10-1, Exhibit 34).

**D. Federal Habeas Action**

On October 16, 2024, Mr. Culler, through counsel, filed his 28 U.S.C. § 2254 habeas petition in the United States District Court for the Southern District of Ohio. (ECF No. 1). Mr. Culler's habeas petition raises a single ground for relief:

1. Trial counsel was ineffective for (a) failing to object to testimonial hearsay and inappropriate expert testimony and (b) failing to discuss same with the defendant or to research the issue.

*Id.* at PageID # 6. On October 17, 2024, the Southern District of Ohio transferred the action to this Court. (ECF No. 2). On April 7, 2025, the Warden filed an answer/return of writ. (ECF No. 10). Mr. Culler filed a traverse on June 23, 2025. (ECF No. 12).

**IV. STANDARDS OF REVIEW AND GOVERNING LAW**

**A. Jurisdiction**

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which

the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Columbiana County Court of Common Pleas sentenced Mr. Culler, and the Court takes judicial notice that Columbiana County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Culler's § 2254 petition.

## B. **Exhaustion and Procedural Default**

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*,

7

456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner

8

was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D. AEDPA Standard of Review

28 U.S.C. § 2254, as amended by AEDPA, provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than

incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

11

possibility for fairminded disagreement." *Id.*

## V.  ANALYSIS

In his sole ground for relief, Mr. Culler asserts that he received the ineffective assistance of trial counsel in violation of his rights under the Sixth and Fourteenth Amendments. Within this ground for relief, Mr. Culler asserts two subclaims. First, he argues that his trial counsel was ineffective in failing to object to testimony from various witnesses on the grounds that such testimony violated his rights under the Confrontation Clause, was hearsay, or constituted improper expert testimony. Second, he maintains that his trial counsel failed to investigate whether such testimony was objectionable and failed to discuss potential objections with Mr. Culler.

### A.  <u>Legal Standards Governing Ineffective Assistance Claims</u>

A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). Under the first prong, the petitioner must overcome the "strong[] presum[ption that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The *Strickland* standard is "extremely deferential." *Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir. 2017). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Id*. (quoting *Strickland*, 466 U.S. at 687).

12

**B.** **Subclaim One: Counsel's Failure to Object to the Introduction of Allegedly Improper Expert Testimony and E.C.'s Out-of-Court Statements**

Mr. Culler first argues that his trial counsel was ineffective in failing to object to testimony that various witnesses provided, arguing that the testimony in question violated his rights under the Confrontation Clause of the Fifth Amendment, was inadmissible hearsay, or constituted improper expert testimony.

The Seventh Appellate District rejected Mr. Culler's arguments on the merits in connection with his direct appeal. When a state court reaches the merits of an ineffective assistance of counsel claim, federal habeas courts provide an additional layer of AEDPA deference to that adjudication under § 2254(d). *See Perkins v. McKee,* 411 F. App'x 822, 828 (6th Cir. 2011). The Sixth Circuit has emphasized the double layer of deference that federal courts must give state courts in reviewing federal ineffective assistance of counsel claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. … An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. … Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (quoting *Harrington,* 131 S.Ct. 770, 786-88).

Here, the Seventh Appellate District held that the introduction of E.C.'s out-of-court statements did not violate the Confrontation Clause because E.C. testified at trial and was available for cross-examination. (ECF No. 10-1, Exhibit 16, ¶¶ 31-32). The Seventh Appellate District also held that the vast majority of the disputed statements were not hearsay under

Ohio law, and that the admission of a small number of potential hearsay statements did not prejudice Mr. Culler in light of the trial court's reasoning. *Id.* at ¶ 50. Finally, the Seventh Appellate District held that the opinion of Nurse Monique Malmer (an expert from the Child Advocacy Center who examined E.C.) that the case was highly concerning for sexual abuse did not constitute improper expert testimony under Ohio's rules of evidence because Ms. Malmer did not vouch for E.C.'s truthfulness or base her opinions solely on what E.C. told her. *Id.* at ¶¶ 26-27.

Applying the double layer of deference under AEDPA, the Seventh Appellate District's decision was not contrary to or an unreasonable application of clearly established law. I will begin with Mr. Culler's argument that testimony from other witnesses regarding E.C.'s out-of-court statements violated the Confrontation Clause, which provides that "the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.

The Supreme Court has "held that this bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42 (2004). The Confrontation Clause also applies both to in-court testimony and to out-of-court statements introduced at trial. *Id.* at 50-51. However, the Supreme Court has "reiterate[d] that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* at 59 n.9; *see also California v. Green*, 399 U.S. 149, 158 (1970) ("there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination"); *Bailey v. Pitcher*, 86 F. App'x 110, 113 (6th Cir. 2004) ("a state court does

14

not violate the Confrontation Clause where the defendant is given a right to cross-examine the individual who made the out-of-court statement").

It is undisputed that E.C. testified at trial and that Mr. Culler had an opportunity to cross-examine her. Indeed, Mr. Culler himself stated that E.C.'s testimony "withstood remarkable impeachment." (ECF No. 1-2, PageID # 23). Because E.C. testified and was subject to cross-examination, the introduction of her out-of-court statements through other witnesses does not violate the Confrontation Clause. *See Shropshire v. Sheldon*, No. 1:19-cv-01299, 2022 WL 1037368, at *15 (N.D. Ohio Jan. 18, 2022) (holding that introduction of child victim's prior, out-of-court statement through detective did not violate Confrontation Clause because child victim testified at trial and was heavily cross-examined), *report and recommendation adopted*, 2022 WL 1028134 (N.D. Ohio Apr. 6, 2022); *Tebelman v. Brunsman*, No. 3:10 CV 2271, 2012 WL 1004759, at *12 (N.D. Ohio Jan. 30, 2012) (holding that Confrontation Clause did not bar introduction of statements minor victim made to social worker because minor victim testified at trial and was subject to cross-examination), *report and recommendation adopted*, 2012 WL 1004758 (N.D. Ohio Mar. 23, 2012).

And because Mr. Culler's Confrontation Clause argument is without merit, his counsel was not ineffective in failing to object to the introduction of that testimony. *See Conley v. Warden, Chillicothe Corr. Inst.*, 505 F. App'x 501, 507-08 (6th Cir. 2012) (holding that ineffective assistance claim was meritless because "counsel [is] under no professional obligation to make meritless objections"); *Ibrahim v. Hooks*, No. 1:17 CV 264, 2018 WL 6524377, at *12 (N.D. Ohio Sept. 27, 2018) ("It is not ineffective assistance of counsel to fail to raise a meritless objection.") (citing *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010); *Greer v. Mitchell*, 264 F.3d 663. 675 (6th Cir. 2001)), *report and recommendation*

15

*adopted*, 2018 WL 6523145 (N.D. Ohio Dec. 11, 2018).

Mr. Culler's argument that his trial counsel was ineffective in failing to object on state law grounds to alleged hearsay or improper expert testimony is similarly unavailing. The Seventh Appellate district thoroughly analyzed the testimony of Ms. Malmer and held that it did not constitute improper expert testimony under Ohio Rule of Evidence 702 because Ms. Malmer did not vouch for E.C.'s veracity or rely solely on E.C.'s own statements. (ECF No. 10-1, Exhibit 16, ¶¶ 16-27). The Seventh Appellate District likewise carefully analyzed the testimony of each lay witness and held that the overwhelming majority of their testimony regarding E.C.'s out-of-court statements did not constitute hearsay under Ohio law. *Id*. at ¶¶ 36-50).

A habeas court "must defer to a state court's interpretation of its own rules of evidence," *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005), and Mr. Culler has not provided a sufficient basis to disturb the Seventh Appellate District's conclusion. Mr. Culler's counsel was not ineffective in failing to raise meritless objections under Ohio law. *See Knoefel v. Phillips*, No. 1:20-cv-1529, 2021 WL 8894449, at *24 (N.D. Ohio Apr. 23, 2021) (habeas court was bound by Ohio appellate court's determination that challenged statements were not hearsay under Ohio law), *report and recommendation adopted*, 2022 WL 2193442 (N.D. Ohio June 17, 2022); *Gorman v. Warden, Chillicothe Corr. Inst*., No. 2:10-CV-1168, 2012 WL 4050069, at *6 (S.D. Ohio Sept. 13, 2012) ("In light of the litany of cases cited by the court of appeals holding that the statements to which Ms. Lampkins testified, and which were contained in her report, were not inadmissible hearsay under the Ohio Rules of Evidence, counsel cannot have been constitutionally ineffective for failing to raise what would clearly have been a futile objection.").

The Seventh Appellate District did hold that at least one of the statements at issue—E.C.'s in-person disclosure of the sexual abuse to her boyfriend—was arguably hearsay. (ECF No. 10-1, Exhibit 16, ¶ 44). However, the court also held that admission of that statement was harmless because Mr. Culler's trial was a bench trial and because the trial court did not rely on that statement in its written decision explaining the court's verdict. (*Id*. at ¶¶ 44, 63). Even assuming that Mr. Culler's trial counsel was ineffective in failing to object to the introduction of this statement on hearsay grounds, he has not shown that the Seventh Appellate District acted contrary to or misapplied clearly established law in holding that Mr. Culler failed to demonstrate prejudice. *See Brown v. Sheets*, 359 F. App'x 628, 632 (6th Cir. 2009) (holding that petitioner did not demonstrate prejudice from counsel's failure to object to alleged hearsay where statements likely would have been admissible and any inadmissible statements were cumulative). I therefore recommend that the Court deny Mr. Culler's first subclaim on the merits.

**C.  <u>Subclaim Two: Failure to Research Objections or Consult with Mr. Culler</u>**

In his second subclaim, Mr. Culler argues that his trial counsel was ineffective in failing to properly research whether to object to the introduction of E.C.'s out-of-court statements or allegedly improper expert testimony and in failing to discuss those potential objections with Mr. Culler.

The Warden first argues that Mr. Culler procedurally defaulted on his second subclaim because he did not raise it in his direct appeal to the Seventh Appellate District and because the Ohio courts dismissed the argument on res judicata grounds when he did raise it in his postconviction petition. I agree.

Ohio has a "dual-track system" for ineffective assistance of counsel claims. *Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016); *see also McGuire v. Warden*, 738 F.3d 741, 751

(6th Cir. 2013). Under this dual-track system, grounds for relief that are based on evidence wholly within the trial record must be brought on direct appeal, while claims based on evidence outside the trial record cannot be brought on direct review and must be raised in a petition for state post-conviction relief. *McGuire*, 738 F.3d at 751 (citing *State v. Cole*, 443 N.E.2d 169, 171 (1982)). In this system, res judicata bars an ineffective assistance of trial counsel claim that is brought in a state post-conviction petition that relies on evidence within the trial record because such a claim could have been brought on direct appeal. *Id.* (citing *State v. Perry*, 226 N.E.2d 104, 108 (1967)).

Mr. Culler did not argue in his direct appeal that his trial counsel was ineffective in failing to research potential objections or in failing to discuss those objections with him. Instead, he raised that argument for the first time in his petition for postconviction relief. (ECF No. 10-1, Exhibit 20). The trial court dismissed Mr. Culler's petition on res judicata grounds, holding that Mr. Culler could have raised the argument on direct appeal because he knew the facts supporting his claim at the time of his appeal. (ECF No. 10-1, Exhibit 22). The Seventh Appellate District affirmed the trial court's res judicata determination, and the Ohio Supreme Court declined to accept jurisdiction over Mr. Culler's subsequent appeal. (ECF No. 10-1, Exhibits 28, 32).

The Sixth Circuit has "repeatedly held that Ohio's *res judicata* rule is an adequate and independent state procedural ground for purposes of procedural default." *Wogenstahl v. Mitchell*, 668 F.3d 307, 341 (6th Cir. 2012); *see also Hand v. Houk*, 871 F.3d 390, 409 (6th Cir. 2017) ("We have previously held that an Ohio court's application of the *res judicata* doctrine is an adequate and independent state ground that bars federal habeas relief."). Mr. Culler does not dispute that proposition, but instead argues that the Seventh Appellate District

erred in applying a res judicata bar here because his postconviction ineffective assistance of counsel argument claim is based on evidence outside the record such that he could not have raised the argument on direct appeal.

It is true that a state's courts erroneous enforcement of a procedural bar "represents no obstacle to [a court's] review" of the merits of a habeas claim. *Jalowiec v. Bradshaw*, 657 F.3d 293, 303 (6th Cir. 2011); *see also Bard v. Davis*, No. 5:23-cv-202, 2024 WL 3205932, at *12 (N.D. Ohio May 8, 2024) ("a federal habeas court reviews de novo an exhausted federal claim when the state court misapplied a procedural bar and did not review the claim on the merits"), *report and recommendation adopted*, 2024 WL 3201108 (N.D. Ohio June 27, 2024). Of particular relevance here, "[h]abeas courts . . . may disregard the res judicata procedural bar where evidence dehors the record that is competent, relevant and material was presented on state post-conviction to support a claim of ineffective assistance of trial counsel." *Jones v. Bradshaw*, No. 1:03 CV 1192, 2015 WL 10733080, at *13 (N.D. Ohio Oct. 30, 2015)

However, Mr. Culler has not shown that the state courts misapplied Ohio's res judicata doctrine in this case. In affirming the trial court's decision, the Seventh Appellate District noted that Mr. Culler had not raised any issue in his postconviction petition that he had not already raised, or could have raised, in his direct appeal. (ECF No. 10-1, Exhibit 28, ¶ 26). Mr. Culler argues that the Seventh Appellate District's conclusion is incorrect because he submitted new evidence outside the trial record along with his postconviction petition, including his own affidavit attesting that his trial counsel never discussed potential objections with him. But the Seventh Appellate District addressed that evidence in its decision, holding that the evidence did not meet a threshold standard of cogency and did not advance his claim beyond mere hypothesis, meaning that Mr. Culler could not rely on it to avoid the res judicata

19

bar under Ohio law. *Id*. (quoting *State v. Lawson*, 103 Ohio App. 3d 307, 215 (1995)). Applying the necessary deference, I cannot say that the Seventh Appellate District erred in concluding that Mr. Culler's evidence failed to meet the applicable standards under Ohio law. Accordingly, Mr. Culler has procedurally defaulted on his second subclaim.

Mr. Culler's procedural default can be excused if he demonstrates either cause and prejudice or that he is actually innocent. *Coleman*, 501 U.S. at 750. Mr. Culler argues that his procedural default should be excused because he submitted new evidence with his postconviction petition establishing that his counsel was unprepared to object to the introduction of E.C.'s out-of-court statements and because there is a reasonable probability that exclusion of those statements would have led to a different outcome. I disagree. As discussed above, the Ohio courts considered Mr. Culler's evidentiary and Confrontation Clause arguments and determined that they were without merit. The Seventh Appellate District also held that, to the extent a small number of the admitted statements may have been hearsay, their admission did not prejudice Mr. Culler because he received a bench trial and the trial court did not rely on those statements in reaching its decision. The Seventh Appellate District's holding was not contrary to or a misapplication of clearly established law, and Mr. Culler thus has not shown that any ineffectiveness of his trial counsel prejudiced him. Accordingly, Mr. Culler cannot establish cause and prejudice to excuse his procedural default.

Even assuming the state courts did misapply Ohio's res judicata rules such that he has not procedurally defaulted on his second subclaim, the claim fails on the merits. For the reasons set forth above, Mr. Culler has not shown a reasonable probability that there would have been a different outcome had his trial counsel objected to the disputed testimony. And because I conclude that Mr. Culler has failed to demonstrate prejudice, I need not consider

whether his counsel was ineffective in allegedly failing to investigate potential objections or in failing to discuss those objections with him. *See Strickland*, 466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"). I therefore recommend that the Court dismiss Mr. Culler's second subclaim as procedurally defaulted or, in the alternative, deny it on the merits.

    **D.**  <u>**Request for Discovery and an Evidentiary Hearing**</u>

    Finally, Mr. Culler requests discovery and an evidentiary hearing regarding whether his trial counsel researched potential objections, discussed those objections with him, or considered potential defense experts.

    Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts provides that a court may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure. *See* Rules Governing § 2254 Cases R. 6(a). A petitioner seeking discovery must provide reasons for the request and must also "include any proposed interrogatories and requests for admission, and must specify any requested documents." Rules Governing § 2254 Cases R. 6(b).

    "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rather, "[b]efore determining whether discovery is warranted, the Court must identify the essential elements of the claim on which discovery is sought" and determine whether the requested discovery will develop facts that will enable the petitioner to show he is entitled to habeas relief. *Newton v. Turner*, No. 1:20-cv-2799, 2024 WL 1853042, at *3 (N.D. Ohio Apr. 29, 2024) (citing *Bracy*, 520 U.S. at 904). "The burden of demonstrating the materiality of the information requested is on the moving party." *Stanford v. Parker*, 266 F.3d 442, 460 (6th

Cir. 2001). Moreover, a court's authority to permit discovery "is limited by [a court's] inability to consider evidence not presented before the state courts when determining the merits of a claim that the state courts addressed on the merits." *Newton*, 2024 WL 1853042, at *2 (citing *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)).

Mr. Culler has not shown that discovery is warranted here. As discussed above, he procedurally defaulted on his second subclaim, and thus cannot show good cause for discovery regarding it. *See Obermiller v. Shoop*, No. 1:19 CV 2193, 2024 WL 404490, at *5 (N.D. Ohio Feb. 2, 2024). Even assuming his second subclaim procedurally defaulted, both subclaims fail because he cannot show prejudice from his counsel's alleged failure to raise objections, research them, or discuss those objections with him. Because his claims fail on the prejudice prong of *Strickland*, any evidence regarding whether his counsel's performance did, in fact, fall below an objective standard of reasonableness would not change the outcome of his petition. Accordingly, I recommend that the Court deny Mr. Culler's request for discovery.

For the same reason, I recommend that the Court deny Mr. Culler's request for an evidentiary hearing. Habeas Rule 8(a) provides that a court may, but is not required to, hold an evidentiary hearing on a petition. Rules Governing § 2254 Cases R. 8(a). Under § 2254(e)(2), if the petitioner has failed to develop the factual basis for the claim in state court, the court may hold an evidentiary hearing only in limited circumstances, including where the factual predicate of the claim could not have been previously discovered with due diligence. *See* 28 U.S.C. § 2254(e)(2).

Mr. Culler has not demonstrated that the factual predicate of his claims could not have been discovered sooner with due diligence here. Moreover, "[w]hen deciding whether to grant

an evidentiary hearing, a court must consider whether such a hearing could enable petitioner to prove the habeas petitioner's factual allegations, which, if true, would entitle the petitioner to federal habeas relief on his claim or claims." *Newton*, 2024 WL 1853042, at *4 (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Because Mr. Culler cannot demonstrate the prejudice prong under *Strickland*, an evidentiary hearing would not enable him to prove allegations that would entitle him to habeas relief.  I therefore recommend that the Court deny Mr. Culler's request for an evidentiary hearing as well.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.  **Legal Standard**

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District

Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

## B. **Analysis**

Mr. Culler has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Culler's petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also recommend that the Court deny Mr. Culler's request for discovery and an evidentiary hearing. Finally, I recommend that the Court not grant him a certificate of appealability.

Dated:  July 23, 2025

*Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings,**

24

**recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15,

2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).