**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREW CULER,<br><br>Petitioner,<br><br>v.<br><br>SHELBIE SMITH, Warden,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:24-cv-1816<br><br>Judge J. Philip Calabrese<br><br>Magistrate Judge<br>Jennifer D. Armstrong |

## OPINION AND ORDER

At a bench trial in the State court in 2020, Petitioner Andrew Culler (spelled correctly) was convicted of one count of sexual battery and two counts of gross sexual imposition then sentenced to 78 months in prison. He filed a petition for a writ of habeas corpus. The Magistrate Judge recommends denying and dismissing Petitioner's claims. He objects to that recommendation on two grounds. For the following reasons, the Court **OVERRULES** Petitioner's objections, **ADOPTS** the Magistrate Judge's report and recommendation, and **DENIES** and **DISMISSES** the petition for habeas corpus. Further, the Court **DECLINES** to issue a certificate of appealability.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Arrest

Mr. Culler's conviction arose from his sexual abuse of his biological daughter, beginning when she was about 9 or 10 years old (ECF No. 1-3, ¶ 47 PageID #56) and continuing until she was 13 (*id.*; ECF No. 10-1, PageID #88). Because Mr. Culler and

the victim's mother were divorced, Mr. Culler had visitation rights. (ECF No. 1-3, ¶ 4 PageID #43.) Therefore, at the time of Mr. Culler's arrest, his daughter would go to his house and regularly spend time with him alone over the weekends. (ECF No. 10-8, PageID ##782–83.)

On July 19, 2018, following a heated argument over a vape pen with Mr. Culler, the victim called her mother to return home early from a routine weekend visitation. (ECF No. 1-3, PageID #43 & #51–52.) Then, Mr. Culler called the police on his ex-wife once she arrived to end the visitation early. (*Id.*) When the police arrived, the victim disclosed to Officer Brian Moore that Mr. Culler repeatedly touched her inappropriately throughout her childhood. (*Id.*) Officer Moore recommended that the victim's mother promptly take the victim to the police station for a formal statement. (*Id.*) The victim's statement prompted Detective Dan A. Haueter to investigate and recover Facebook and text messages as evidence. (ECF No. 1-3, PageID #55.) Both officers testified at trial. (*Id.*, PageID #54 & #55.)

After the formal statement, the victim met with an intake investigator at Children's Services, who helped schedule the victim's subsequent appointments at a local hospital. (ECF No. 10, PageID #15.) There, the victim met with a social worker, Courtney Wilson, who conducted a psychological and diagnostic interview. (ECF No. 1-3, PageID #37.) Detective Haueter observed the victim's interview with the social worker (*id.*, PageID #55), which was recorded (ECF No. 10-7, PageID #710). A nurse practitioner, Monique Malmer, conducted a medical exam based on the victim's disclosures to the social worker. (ECF No. 10, PageID #32.) The intake investigator,

the social worker, and the nurse practitioner all testified at trial. (ECF No. 1-3, PageID #44.)

### B. Indictment, Bench Trial, and Conviction

Mr. Culler was indicted on one count of sexual battery under Section 2907.03(A)(5) of the Ohio Revised Code, a third-degree felony, and two counts of gross sexual imposition under Section 2907.05(A)(4), fourth-degree felonies. (ECF No. 10-1, PageID #79.) Defendant waived his right to a jury trial (*id.*, PageID #68), and the case proceeded to a bench trial (ECF No. 10, Page ID #15).

A trial, the victim testified, describing multiple, distinct instances during which Mr. Culler sexually abused her. (*Id.*) Mr. Culler's unwanted touching included fondling the victim's erogenous zones, performing digital and oral sexual acts, and handling the victim's body to masturbate himself. (*Id.*) Specifically, she recalled a specific instance when Mr. Culler gave her whiskey before he undressed and forced the victim to perform sexual acts. (*Id.*) Further, she testified that Mr. Culler played shark videos to watch together before switching the screen to pornography and asking her to perform the same acts with him. (*Id.*, PageID # 16.)

The victim testified that Mr. Culler often sent her texts and direct messages through Facebook Messenger propositioning her. (*Id.*) She testified that when her parents lived together, Mr. Culler touched her when her mother went to work overnight. (ECF No. 10-1, PageID #148.) Corroborating evidence includes recovered texts from Mr. Culler matching the descriptions to which his daughter testified. (ECF No. 10-1, PageID #39.) Mr. Culler's ex-wife testified that, when she was still married to Mr. Culler, she found empty whiskey bottles in the garage and basement. (*Id.*,

PageID #89.) She described Mr. Culler as having a drinking problem during their marriage. (*Id.*) Mr. Culler's ex-wife confirmed that during their marriage, their daughter and Mr. Culler regularly were alone at home overnight when she worked the night shift. (ECF No. 10-7, PageID #583.) Additionally, Mr. Culler admitted that he enjoys watching shark videos. (ECF No. 10-1, PageID #89.)

The State trial court qualified Malmer, the nurse practitioner, as an expert in child sexual abuse examinations, and neither party objected. (ECF No. 10, PageID #32.) At trial, Malmer explained how she formed her opinion that the victim's disclosures justified "significant concern for sexual abuse," even without the victim displaying any physical indications of abuse. (*Id.*, PageID #32–33.) She testified that she watched a recording of the victim's diagnostic interview with the social worker to prepare how physically to assess the victim. (*Id.*, PageID #32.) She did not expect to find the victim to present physical evidence of sexual abuse because female child victims seldom do. (*Id.*)

Instead, Malmer explained that her conclusion specifically relied on the victim's behavior during the interview with Wilson, citing the victim's monotone voice and disinterested attitude. (*Id.*) Further, the daughter relayed experiential details, which is consistent with child grooming and sexual abuse. (*Id.*) Malmer reported that the victim recalled intimate details of Mr. Culler's sexual contact and the feelings and visuals she experienced during it. (*Id.*) The victim described multiple, distinct instances of Mr. Culler's sexual contact in a chronology that demonstrated how Mr. Culler's abuse escalated over time: the first incident consisted of unwanted

touching over clothes, while the last nearly ended with penile penetration. (*Id.*) Further, Malmer testified that the victim described the "ejaculation or the feelings she got, whether it was pain, or the position of her legs, or a description of what was being worn. Those are events that are descriptions that still remain with them from the traumatic event that they experienced." (*Id.*)

The victim's boyfriend testified at trial. (*Id.*, PageID #38.) He indicated that the victim had confided in him over text message two days before she reported Mr. Culler's abuse to the police. (*Id.*, PageID #15.) The text messages between the victim and her boyfriend were admitted into evidence. (*Id.*)

On October 21, 2020, the State trial court found Mr. Culler guilty of all counts: one count of sexual battery and two counts of gross sexual imposition. (ECF No. 10-1, PageID #410.) In so finding, the State trial court noted that the victim's testimony was especially credible—specifically, the victim refrained from embellishing her testimony when she easily could have. (*Id.*, PageID #90.) Mr. Culler was sentenced to 78 months of incarceration. (*Id.*, PageID #81.)

### C. Post-Conviction Motions

Petitioner made several attempts to challenge his conviction, including on direct appeals and through petitions for post-conviction relief. Each time, he cited ineffective assistance of counsel and evidentiary issues surrounding propensity testimony, hearsay, and the Confrontation Clause. (ECF No. 1, PageID #3.) In December 2021, the intermediate appellate court unanimously affirmed Mr. Culler's conviction. (ECF No. 1-3, PageID #60.) In April 2022, the Ohio Supreme Court

declined to exercise jurisdiction over Mr. Culler's subsequent appeal. (*Id.*, PageID #62.)

While his direct appeal to the Ohio Supreme Court was pending, Mr. Culler filed for post-conviction relief. (*Id.*, PageID #29.) He argued that his trial counsel provided ineffective assistance by failing to address testimony that allegedly violated evidentiary rules. (ECF No. 1, PageID #6.) The State trial court dismissed Mr. Culler's petition in March 2022. (ECF No. 1-3, PageID #31.) He appealed, and the intermediate appellate court unanimously affirmed the State trial court's decision in June 2023. (*Id.*, PageID #39.) Both the Ohio Supreme Court (*id.*, PageID #63) and the United States Supreme Court (*id.*, PageID #28) declined to hear Mr. Culler's subsequent appeals.

### D. Habeas Petition

On October 10, 2024, Mr. Culler filed a petition for a writ of habeas corpus. (ECF No. 1, PageID #16.) In his petition, Petitioner raises one ground, specifically that his trial counsel was ineffective for "failing to object to testimony hearsay and inappropriate expert testimony." (ECF No. 1-2, PageID #24.) Further, he argues that his trial counsel's failure to research or discuss the alleged evidentiary issues with Mr. Culler also entitles him to habeas relief. (*Id.*)

On July 23, 2025, the Magistrate Judge issued a report and recommendation. (ECF No. 14, PageID #1090.) In her report, the Magistrate Judge recommends that the Court deny and dismiss the petition. (*Id.*) Petitioner timely objected on two grounds. (ECF No. 15, PageID #1116 & #1119.) First, Petitioner objects that the Magistrate Judge improperly applied res judicata in her recommendation. (*Id.*,

PageID #1116.) Second, Petitioner objects that the Magistrate Judge erred in finding that his trial counsel's failure to object to the expert testimony's hearsay and "improper bolstering" did not amount to ineffective assistance. (*Id.*, PageID #1119.)

**STANDARD OF REVIEW**

A district court judge may direct a Magistrate Judge to submit "proposed findings of fact and recommendations for the disposition, by a judge of the court," 28 U.S.C. § 636(b)(1)(B), of a petition for a writ of habeas corpus, which the Court does by Local Rule, *see* L.R. 72.2. When reviewing a report and recommendation, if a party objects within the allotted time, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which the objection is made." 28 U.S.C. § 636(b)(1)(C); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). Objections must be specific, not general, and should direct the Court's attention to a particular dispute. *Howard v. Secretary of Health & Hum. Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985).

Upon review, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." 28 U.S.C. § 636(b)(1)(C). Importantly, the Court's job is not to conduct a free-wheeling examination of the entire report and recommendation, but only to address any specific objections that a party has advanced to some identified portion of it.

Accordingly, it is the Court's task in this matter to review the Magistrate Judge's report and recommendation de novo, based on the specific objections that Petitioner raises.

**STANDARD FOR A WRIT OF HABEAS CORPUS**

Where a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States," he is entitled to a writ of habeas corpus. 28 U.S.C. §§ 2241(c)(3) & 2254(a). The writ tests the fundamental fairness of State court proceedings resulting in the deprivation of an individual's liberty. *See, e.g.*, *Brown v. Allen*, 344 U.S. 443, 463 (1953); *Powell v. Collins*, 332 F.3d 376, 388 (6th Cir. 2003) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)); *Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2000). 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"With the AEDPA, Congress limited the source of law for habeas relief to cases decided by the United States Supreme Court." *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A State court adjudication is "contrary to" Supreme Court precedent under Section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached

by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. *Williams*, 529 U.S. at 405. "Avoiding these pitfalls does not require citation of [Supreme Court] cases—indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

Under Section 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Williams*, 529 U.S. at 410). A State court adjudication involves "an unreasonable application of" Supreme Court precedent under Section 2254(d)(1) in one of two ways: (1) if the State court identifies the correct governing legal rule from the Supreme Court's cases[,] but unreasonably applies it to the facts of the particular State prisoner's case; or (2) if the State court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *See Williams*, 529 U.S. at 407.

At bottom, the writ tests the fundamental fairness of the State court proceedings resulting in the deprivation of the petitioner's liberty. *See, e.g.*, *Brown v. Allen*, 344 U.S. 443, 463 (1953); *Powell v. Collins*, 332 F.3d 376, 388 (6th Cir. 2003) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)); *Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2000).

## ANALYSIS

In his sole ground for relief, Petitioner maintains that his "trial counsel was ineffective for (a) failing to object to testimony hearsay and inappropriate expert testimony and (b) failing to discuss same with the defendant or research the issue." (ECF No. 1-2, PageID #24.) Petitioner maintains that his trial counsel's failure to object to unspecified testimony "suggests a failure in duty to vigorously defend Mr. Culler," not a strategic decision. (*Id.*) Moreover, he argues that his trial counsel was also ineffective for failing to research or inform him of the purported improper testimony and hearsay. (*Id.*) According to Petitioner, these failures violated his rights under the Sixth Amendment and the Confrontation Clause. (*Id.*, PageID #26.)

The Magistrate Judge recommends dismissal of the petition. (ECF No. 14, PageID #1106.) The State appellate court held that "the overwhelming majority" of each witness' testimony was not hearsay under Ohio law. (*Id.* at 1105.) Likewise, the State appellate court held that Malmer did not give improper expert testimony because she did not testify to the victim's truthfulness or merely repeat her statements. (ECF No. 10, PageID #18–19.) Ultimately, the Magistrate Judge recommends that Mr. Culler's trial counsel was not ineffective in choosing not to object to unobjectionable testimony. (ECF No. 14, PageID #1106.) Further, the Magistrate Judge noted that the doctrine of res judicata precludes Petitioner's ability to raise allegations of ineffective trial counsel. (*Id.*, PageID #1108–09.)

Petitioner objects to the report and recommendation on two grounds. (ECF No. 15, PageID #1116.) First, he objects that the Magistrate Judge misapplied res

judicata to Petitioner's claim not raised on direct appeal. (*Id.*) Second, Petitioner objects that his trial counsel was ineffective by failing to object to expert testimony. (*Id.*, PageID #1119.)

**I. Res Judicata**

While directly appealing his conviction to the Ohio intermediate appellate court, Petitioner raised no issue regarding his trial counsel's failure to research or inform him of improper testimony or hearsay. (ECF No 10-1, PageID #224.) But when he raised the issue in postconviction proceedings, Ohio courts dismissed the argument on res judicata grounds, citing his failure to raise the issue on direct appeal. (*Id.*, PageID #250–52.)

Petitioner argues that a "petition of evidence [outside] the record of ineffective assistance of counsel is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of res judicata." (ECF No. 15, PageID #1116 (citing *State v. Cole*, 2 Ohio St.3d 112, 114, 443 N.E.2d 169, 171 (1982)).) But res judicata constitutes an adequate and independent State procedural ground that bars further review of a claim in federal court. *See Monzo v. Edwards*, 281 F.3d 568, 577 (6th Circ. 2002). Here, the record does not reflect a fundamental miscarriage of justice from enforcing the State's application of res judicata. Under *Cole*, a postconviction petitioner can avoid dismissal based on res judicata where the petitioner's new evidence of ineffective counsel overwhelms any evidence on the record that counsel was effective. *Id.* at 114. Generally, "evidence presented outside the record must meet some threshold standard of cogency." *State v. Lawson*, 103 Ohio App.3d 307, 315, 659 N.E.2d 362, 367 (1995) (quotation omitted). In other words, res judicata applies

where the evidence outside the record supporting the ineffective performance of trial counsel pales when "measured against the overwhelming evidence in the record of trial counsel's competence." *Cole*, 2 Ohio St. 3d at 114. But little to no evidence in the record supports a claim of ineffective assistance of the type Petitioner raises.

Additionally, Petitioner relies on only half the *Cole* balancing test, contending that the allegations in his affidavit are plausible, not contrived like in *Cole*. (ECF No. 15, PageID #1117.) He insists that his affidavit asserting that his trial counsel failed to communicate, investigate, or object is sufficient evidence to avoid res judicata. (*Id.*) But Petitioner's affidavit fails to overcome the presumption under *Strickland* that his counsel provided effective assistance or the evidence on the record that his trial counsel performed effectively. Petitioner cites his trial counsel's lack of objections on the record as his evidence of ineffective counsel. (ECF No. 15, PageID #1118; ECF No. 10-1, PageID #224.) Still, particularly in a bench trial, the failure to object alone, even to otherwise in admissible evidence, falls short of ineffective assistance. If erroneous at all, trial counsel's decision not to object falls short of a fundamental miscarriage of justice. Accordingly, res judicata fairly precludes Petitioner's habeas claims.

For these reasons, the Court **OVERRULES** this objection.

## II. Failure to Object

Also, Petitioner objects that his trial counsel's performance was constitutionally ineffective because of the "fail[ure] to object to improper bolstering of the child-victim's account" through Malmer's testimony. (ECF No. 15, PageID #1119.) Petitioner alleges that Malmer simply parroted the account the victim

relayed to her "under the guise of expert testimony." (*Id.*) Further, Petitioner contends that his counsel was ineffective for failing to Malmer's testimony as an expert. (*Id.*)

To prevail on his claim of ineffective assistance of counsel, Petitioner must satisfy the two-pronged test that the Supreme Court established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See, e.g.*, *Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020). The *Strickland* test requires Petitioner to prove that (1) the "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. A successful ineffective assistance claim requires Petitioner to establish both elements. *Id.* at 687, 697. Therefore, failure to establish either element will cause Petitioner's claim to fail.

**II.A. Deficient Performance**

To establish his defense attorney's conduct was "deficient," Petitioner must show that counsels' errors were so serious that they failed to "function[] as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687–88. Counsel enjoy a presumption that they discharge their duties in a sufficiently effective manner and exercise reasonable professional judgment based on the circumstances at the time. *Id.* at 689–90. To establish error, Petitioner must overcome this "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Here, Petitioner maintains that his trial counsel's failure to object to Malmer's testimony, alone, constitutes ineffective counsel. (ECF No. 15, PageID #1119; *id.*, PageID #1118 ("the constitutional violation involved both the nurse's testimony and counsel's failure to challenge it").)

Petitioner contends Malmer failed to "base her testimony on clinical findings," relying instead on impermissible hearsay. (ECF No. 15, PageID # 1119.) At trial, Malmer described forming her medical opinion that the victim suffered sexual abuse by conducting a physical exam and noting the victim's monotone voice, dejected attitude, and "ability to recall experiential details" related during her interview with the social worker. (ECF No. 10, PageID #33.) In other words, Malmer did not simply recapitulate the victim's testimony. Instead, she analyzed parts of the victim's disclosure to identify the details supporting her clinical conclusion that the victim "'showed significant concern for sexual abuse.'" (*Id.*, PageID #33.) On cross-examination, Malmer maintained that her physical, psychological, and behavioral assessments of the victim were "'for diagnostic purposes for the medical exam.'" (*Id.*) Psychological and behavioral child sexual abuse examinations are clinical, especially when a nurse practitioner conducts them in child sexual abuse examinations.

Petitioner relies on *Friar v. Wiersma*, No. 21-cv-725, 2024 WL 4751380 (W.D. Wis. Nov. 7, 2024), where the petitioner argued that his trial counsel was ineffective for failing to object to the hearsay testimony of a sexual assault nurse examiner. But Petitioner mischaracterizes *Friar*'s holding. (ECF No. 15, PageID #1118.) He says: "In *Friar*, . . . the court granted a Certificate of Appealability on an ineffective assistance claim where trial counsel failed to object to a SANE nurse repeating the victim's allegations." There, the court granted a certificate of appealability on a separate issue on diabetes and alcohol consumption affecting the victim's testimony, an issue unrelated to the nurse's testimony. *Friar,* 2024 WL 4751380, at *8.

In *Friar*, even if the nurse's testimony was hearsay, his counsel's strategy not to object still fell short of ineffective counsel. *Id.* at *4. As the court recognized, a decision not to object to the hearsay was "reasonable." *Id.* at *3. Further, the court was clear that Friar's petition made "no reasonable argument" that trial counsel's failure to object to the nurse's testimony "satisfied *Strickland*." *Id.* at *4. Here, as there, failure to object does not provide grounds for ineffective assistance of counsel, especially in a bench trial where the law presumes that the judge disregarded improper evidence. Petitioner argues that counsel's failure to object to the nurse's testimony "allowed the jury to hear" out-of-court statements. (ECF No. 15, PageID #1119). But Petitioner did not have a jury trial.

Accordingly, Petitioner fails to satisfy the first *Strickland* prong.

**II.B. Prejudice**

Second, Petitioner must show that any deficiencies in his counsel's performance were "prejudicial" to his defense. *Strickland*, 466 U.S. at 690. Fundamentally, Petitioner must show that his counsel's decisions "were so serious as to deprive [him of] a fair trial, a trial whose result is reliable." *Id.* at 687; *see also Monea v. United States*, 914 F.3d 414, 419 (6th Cir. 2019). Again, this element presents a difficult burden because it requires Petitioner to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the [original] outcome." *Id.*

Petitioner fails even to address the second *Strickland* prong. If Malmer's testimony was objectionable and Petitioner's trial counsel was ineffective for failing

to object to it, the trial record provides sufficient evidence corroborating the victim's testimony. Specifically, the testimony of the victim's mother and boyfriend, text messages between the victim and her father, and Petitioner's own admissions support a finding of guilt beyond a reasonable doubt. In this regard, Malmer's testimony did not prejudice Petitioner by tipping the scales to conviction. By extension, his trial counsel's failure to object was not so harmful that Petitioner's trial produced an "unreliable" result. *Strickland*, 466 U.S. at 694.

Accordingly, the Petitioner fails to satisfy the second *Strickland* prong.

* * *

Because Petitioner fails to establish either prong under *Strickland*, the Court **OVERRULES** this objection too.

## CERTIFICATE OF APPEALABILITY

Without a certificate of appealability, a habeas petitioner cannot appeal a final order in a habeas proceeding. 28 U.S.C. § 2253(c)(1). Issuance of a certificate of appealability requires Petitioner to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This means that the petitioner must show that reasonable jurists would find the district court's determination of the relevant constitutional claims debatable or incorrect. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). The petitioner need not show that the appeal would succeed to be eligible for a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Based on this standard, the Court **DECLINES** to issue a certificate of appealability. Based on the record presented, the Court finds that reasonable jurists could not fairly debate the outcome.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Petitioner's objections (ECF No. 15), **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 14), **DENIES** and **DISMISSES** the petition (ECF No. 1), and **DECLINES** to issue a certificate of appealability.

**SO ORDERED.**

Dated: September 30, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio